## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TIMOTHY BETTS, SR.**                    **CIVIL ACTION**

**VERSUS**                                **NO. 19-14680**

**ROSS BRENNAN ET AL.**                   **SECTION: "H"**

## ORDER AND REASONS

      Before the Court is Defendants' Motion for Summary Judgment (Doc. 8). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

      This 42 U.S.C. § 1983 action arises out of a traffic stop during which Plaintiff Timothy Betts, Sr. alleges that he was tased without provocation. On November 28, 2018, Plaintiff was stopped for speeding by Defendant State Trooper Ross Brennan. Plaintiff alleges the following facts:

> At the time of the encounter Trooper Brennan ordered Plaintiff to exit his vehicle and provide his license, registration and insurance. Plaintiff returned to the vehicle to retrieved requested information. Trooper Brennan requested that Plaintiff to [sic] exit the driver's seat and stand at the back of his vehicle after retrieving requested documents. Plaintiff refused to exit the

1

vehicle when Trooper Brennan approached, attempted to and touched the plaintiff's arm, the plaintiff jerked away from Trooper Brennan while exiting his vehicle and exclaiming that Trooper Brennan should not touch plaintiff and call for backup.

Next, Trooper Brennan created distance between himself and the plaintiff and ordered the plaintiff to face his vehicle with his hands behind his back. The plaintiff put his hands in the air and turned around at a 90 degrees angle still communicating with Trooper Brennan. Trooper Brennan continued to verbally communicate with the plaintiff in order to gain compliance and instructed him to put his hands behind his back. Plaintiff complied to the direct order; however, plaintiff was tased by Trooper Brennan.[1]

Plaintiff alleges that the use of the taser resulted in mental and physical injuries. Defendants dispute these facts and contend that Plaintiff repeatedly refused to comply with Brennan's orders prior to Brennan's utilization of the taser.

As a result of the incident, Plaintiff was charged with speeding; intentionally interfering with, opposing, resisting, or obstructing an officer under Louisiana Revised Statutes § 14:108; and operating a vehicle with improperly tinted windows. On August 7, 2019, Plaintiff pleaded guilty to the charges of speeding and resisting an officer.

Plaintiff brings this suit against Brennan and the State of Louisiana through the Louisiana Department of Public Safety and Corrections, Office of State Police ("DPSC") alleging excessive force under § 1983, as well as assault, battery, and negligent and intentional infliction of emotional distress under Louisiana law. Defendants now move for summary judgment, arguing that (1)

---

[1] Doc. 11.

Plaintiff's claims are barred by *Heck v. Humphrey*, (2) Brennan is entitled to qualified immunity, and (3) DPSC is not a "person" liable under §1983. This Court will consider each argument in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

### A. *Heck v. Humphrey*

First, Defendants argue that pursuant to the Supreme Court's decision in *Heck v. Humphrey*, Plaintiff cannot succeed on his claim for excessive force because he pleaded guilty to resisting arrest.[10] Pursuant to *Heck,*

> a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[11]

---

[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[10] 512 U.S. 477 (1994). Defendants argue that Louisiana law also bars civil actions that collaterally attack the validity of criminal judgments and that the *Heck* analysis is applicable to Plaintiff's state law claims. *See* Lemoine v. Wolfe, 168 So. 3d 362, 368 (La. 2015).

[11] Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Heck*, 512 U.S. at 486–87).

When a district court confronts a § 1983 claim for damages that implicates a conviction or sentence, "*Heck* requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[12]  If that is the case, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[13]  Put another way, if it is possible both for Plaintiff to have resisted arrest and for Defendant's use of force to be objectively unreasonable, then *Heck* does not bar Plaintiff's claim.[14] The Fifth Circuit has held that "a § 1983 claim [does] not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck,* if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."[15] "[T]he determination of whether such claims are barred is analytical and fact-intensive, requiring [a court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction."[16]  Accordingly, "the court must review the sequence of events as alleged by the plaintiff and determine whether that sequence of events is inconsistent with the underlying criminal conviction."[17]

Plaintiff argues that his version of events can support both a conviction for resisting arrest and a claim for excessive use of force. This Court agrees. Plaintiff contends that he initially refused to comply with Brennan's request

---

[12] *Id.* (citations omitted).

[13] *Id.*

[14] *See id.* at 398.

[15] Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008).

[16] *Id.*

[17] Pertuz v. Normand, No. 13-0293-SS, 2014 WL 1246839, at *7 (E.D. La. 2014).

for him to exit his vehicle and jerked his arm away when Brennan touched him. Plaintiff alleges, however, that at the time the taser was deployed, Plaintiff was standing outside of his vehicle with his hands behind his back. Indeed, the body camera footage provided to this Court supports these allegations. The state court did not specify what behavior resulted in Plaintiff's conviction for resisting arrest, but Plaintiff's behavior prior to exiting the vehicle would have been sufficient to sustain the conviction. To prevail on an excessive force claim, Plaintiff must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." [18] The Court finds that Plaintiff could make this showing without impugning his state court conviction. Accordingly, *Heck* does not bar Plaintiff's claims.

### B. Qualified Immunity

Next, Defendants argue that Brennan is entitled to qualified immunity from Plaintiff's § 1983 claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [19] Plaintiff has the burden of rebutting "the officers' qualified-immunity defense by establishing a genuine fact issue as to whether the officers' allegedly wrongful conduct violated clearly established law." [20]

In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks

---

[18] Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004).
[19] Griggs v. Brewer, 841 F.3d 308, 312 (5th Cir. 2016) (internal quotation omitted).
[20] Rockwell v. Brown, 664 F.3d 985, 991 (5th Cir. 2011).

whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. . . . The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation.[21]

In cases alleging excessive force, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law."[22]

To prevail on a claim for excessive force under the Fourth Amendment, Plaintiff must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." [23] "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on the facts and circumstances of each particular case."[24] In *Graham v. Connor*, the Supreme Court set forth factors to consider in determining whether a use of force was reasonable: (1) the "severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) and "whether he is actively resisting arrest or attempting to evade arrest by flight."[25]

---

[21] Tolan v. Cotton, 134 S.Ct. 1861, 1865 (2014) (internal quotations and alterations omitted).

[22] *Griggs*, 841 F.3d at 313 (internal citation omitted).

[23] *Flores*, 381 F.3d at 396.

[24] Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009).

[25] Graham v. Connor, 490 U.S. 386, 396 (1989).

7

The body camera footage provided to this Court of the incident at issue reveals the following facts: Plaintiff was pulled over during daylight for driving 13 miles per hour above the speed limit.[26] Plaintiff disputed the fact that he was speeding and initially refused to step out of his car.[27] Plaintiff repeatedly asked Brennan for an explanation for his order to step out of the car.[28] He also jerked away from Brennan when he attempted to touch him to remove him from the vehicle.[29] After his initial resistance, Plaintiff voluntarily exited his vehicle, turned to face the vehicle, and put his hands in the air.[30] At the same time that Plaintiff was exiting his vehicle, Brennan pulled out his taser and pointed it at Plaintiff.[31] While Plaintiff was standing outside of his vehicle with his hands in the air, Brennan ordered him to put his hands behind his back.[32] Brennan made this request four times in the span of eight seconds before Plaintiff complied.[33] Brennan then requested that Plaintiff turn around to face him.[34] Brennan again made this request four times in the span of eight seconds.[35] When Plaintiff failed to comply with the order during this time frame, Brennan deployed his taser.[36] Brennan warned Plaintiff that he would use the taser three seconds before doing so.[37] Accordingly, less than 25 seconds

---

[26] Exhibit B at 0:00:58–0:01:05.
[27] *Id.* at 0:01:05–0:02:55.
[28] *Id.* at 0:02:13–0:02:55.
[29] *Id.* at 0:02:37–0:02:55.
[30] *Id.* at 0:02:13–0:03:53.
[31] *Id.* at 0:03:54.
[32] *Id.* at 0:03:57.
[33] *Id.* at 0:03:57–0:04:05.
[34] *Id.* at 0:04:06.
[35] *Id.* at 0:04:06–0:04:14.
[36] *Id.* at 0:04:14.
[37] *Id.* at 0:04:11–0:04:14.

elapsed from the time that Plaintiff voluntarily exited the vehicle to the time that Brennan deployed the taser.[38] Only nine seconds elapsed from the time that Plaintiff voluntarily put his hands behind his back to the time that Brennan deployed the taser.[39] Throughout the encounter outside of his vehicle, Plaintiff was inquiring what he had done wrong.[40] At the time he was tased, Plaintiff was standing outside of his vehicle, facing his vehicle, and holding his hands behind his back.[41]

Applying the *Graham* factors to these facts, this Court finds Brennan's use of force to be unreasonable. Plaintiff was pulled over for a minor traffic violation. He was standing outside of his vehicle with his hands behind his back and therefore did not present a threat or flight risk. Viewed in a light most favorable to Plaintiff, he was, *at most*, passively resisting arrest; he was slow to comply with and questioned the reasoning for Brennan's orders.

In *Hanks v. Rogers*, the Fifth Circuit reversed the lower court's grant of qualified immunity on remarkably similar facts, holding that where "an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force . . . is clearly unreasonable and excessive" and clearly established law demonstrates that such conduct violates the Fourth Amendment.[42] The plaintiff in *Hanks*, Marcus Hanks, was stopped for traveling 20 miles per hour below the speed limit.[43] The officer who made the stop, Randall Rogers, instructed him to step

---

[38] *Id.* at 0:03:53–0:04:14.

[39] *Id.* at 0:04:05–0:04:14.

[40] *Id.* at 0:03:53–0:04:14.

[41] *Id.* at 0:04:14.

[42] Hanks v. Rogers, 853 F.3d 738, 748 (5th Cir. 2017).

[43] *Id.* at 742.

out of his vehicle.[44] Just as here, Hanks initially refused to do so and questioned the instruction.[45] Eventually, he voluntarily exited his vehicle and stood behind it.[46] Rogers then instructed Hanks to take his hands out of his pockets to which he complied.[47] Next, Rogers instructed Hanks to put his hands on the trunk of the vehicle.[48] After questioning the instruction, the plaintiff eventually complied.[49] Seconds later, Rogers instructed Hanks to put his hands behind his head.[50] The plaintiff complied.[51] Immediately thereafter, Rogers instructed Hanks to kneel.[52] The plaintiff questioned this instruction and asked whether he was under arrest.[53] Rogers repeated his instruction several more over times before rushing towards Hanks and administering a blow to his upper back and neck.[54] For the thirty seconds prior to the use of force, the plaintiff stood facing away from Rogers with his empty hands on the trunk of his car, on the back of his head, or behind his back, and Rogers had his taser pointed at the plaintiff's back.[55] "Hanks's resistance was, at most, passive, and consisted chiefly of remaining on his feet for about twenty seconds after Officer Rogers' first order to kneel, during which time Hanks twice asked whether he was under arrest."[56] The Fifth Circuit concluded that:

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.* at 742–43.
[55] *Id.* at 746.
[56] *Id.*

> [C]learly established law demonstrated . . . that it was clearly
> unreasonable and excessive for Officer Rogers to abruptly escalate
> the encounter via a physical takedown where (1) Officer Rogers
> stopped Hanks for a minor traffic offense; (2) immediately before
> the takedown, Officer Rogers had his taser aimed at Hanks's back
> while Hanks stood against his vehicle, facing away from Officer
> Rogers, with his empty hands displayed behind his back,
> presenting no immediate threat or flight risk; and (3) Hanks
> offered, at most, passive resistance, including asking whether he
> was under arrest.[57]

Defendants acknowledge the similarities between *Hanks* and the facts at issue here but argue that this case is distinguishable because Brennan did not "abruptly rush to overwhelming physical force."[58] Defendants argue that Brennan repeated his verbal commands to Plaintiff numerous times and warned him that he would be tased prior to use of force. This Court does not find these facts to be a significant distinction from those in *Hanks*. In fact, the officer in *Hanks* waited twenty seconds for the plaintiff to comply with his order to kneel before using force. Here, Brennan waited eight seconds. In both scenarios the plaintiffs had been stopped for minor traffic offenses, they were outside of their vehicles with their hands fully visible, and they had complied—albeit reluctantly—with the officers' earlier orders. "No reasonable officer who is aiming a taser at the back of an individual such as Hanks—i.e., an individual who (1) was stopped for a minor traffic violation; (2) exited his car and has his hands displayed behind his back, thus presenting no immediate threat or flight risk; and (3) has displayed, at most, passive resistance, including asking whether he was under arrest—would escalate the situation via a physical

---

[57] *Id.* at 749–50.
[58] Doc. 8-1 at 13.

takedown *only seconds* after ordering that individual to kneel."[59] Defendants do not provide this Court with any compelling reason to reach a decision contrary to that in *Hanks*. Accordingly, this Court has no trouble finding that Plaintiff has alleged the violation of a clearly established constitutional right, and Brennan's conduct was objectively unreasonable in light of that clearly established law. Brennan is not entitled to qualified immunity.

### C. § 1983 Claims Against DPSC

Finally, Defendants correctly point out that Plaintiff cannot succeed on his § 1983 claim against DPSC because DPSC is not a "person" within the meaning of that statute.[60] Accordingly, Plaintiff's § 1983 claim against DPSC is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED IN PART, and Plaintiff's § 1983 claim against DPSC is DISMISSED WITH PREJUDICE. All other requests for relief are DENIED, and Defendant Brennan is not entitled to qualified immunity.

New Orleans, Louisiana this 22nd day of January, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[59] *Hanks*, 853 F.3d at 749 (emphasis added).
[60] *See* Washington v. Louisiana, 425 F. App'x 330, 333 (5th Cir. 2011).